IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Charlene J.,[1] <br><br> **Plaintiff,** <br><br> v. <br><br> ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[2] <br><br> **Defendant.** | Case No. 17 C 2832 <br><br> Magistrate Judge Beth W. Jantz |

### MEMORANDUM OPINION AND ORDER

Plaintiff Charlene J. brings this action under 42 U.S.C. § 405(g) for review of the Commissioner's decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.[3] The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

### I. PROCEDURAL HISTORY

On April 30, 2013, Plaintiff applied for SSI, alleging that she became disabled on February 22, 2013 because of diabetes mellitus, glaucoma, and high blood

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Andrew Saul as the named defendant.

[3] Plaintiff notes that she also applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act concurrent with her SSI application, but she was not insured for Title II DIB at the time of her claim. (Dkt. 9 at 1, fn1). Accordingly, she focuses her appeal only on her SSI application. (*Id.*)

pressure. (R. at 83–84). Her claim was denied initially on January 10, 2014, and upon reconsideration on March 14, 2014, after which Plaintiff timely requested a hearing. (*Id.* at 14–16, 83–93, 101–07). Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ) on October 27, 2015. (*Id.* at 35–81). The ALJ also heard testimony from Richard J. Hamersma, a vocational expert (VE). (*Id.*).

The ALJ issued a decision denying benefits on November 24, 2015. (R. at 17–34). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since February, 22, 2013, her alleged disability onset date. (*Id.* at 22). At step two, the ALJ found that Plaintiff's (a) loss of vision in her left eye with history of central retinal vein occlusion and glaucoma affecting the left eye; (b) type II diabetes mellitus; and (c) headaches were severe impairments. (*Id.*)  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations. (*Id.* at 26).

The ALJ then assessed Plaintiff's Residual Functional Capacity ("RFC")[4] and determined that Plaintiff has the RFC to perform the full range of medium work as defined in 20 C.F.R. §§404.1567(c) and 404.967(c) except that she is unable to work at heights or frequently climb ladders, should avoid operation of moving or dangerous machinery, and has a loss of vision in the left eye and no depth perception. (R. at 27). At step four, based on Plaintiff's RFC and the VE's testimony, the ALJ determined

---

[4] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC, which is the most a claimant can do despite any limitations. *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *1–2 (July 2, 1996).

2

that Plaintiff was able to perform her past relevant work as a cashier. (*Id.* at 29). Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Social Security Act, from the alleged onset date through the date of the ALJ's decision. (*Id.*).

On February 16, 2017, the Appeals Council denied Plaintiff's request for review. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. DISCUSSION

The Court will uphold the ALJ's decision if it is supported by "substantial evidence"—that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). In reviewing the ALJ's decision, the Court may not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the" ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal quotation omitted). Although this review is deferential, it is not "a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The ALJ must build "an accurate and logical bridge" between the evidence and his conclusion. *Jeske v. Saul*, 955 F.3d 583 (7th Cir. 2020) (internal quotation omitted).

3

Plaintiff argues that the ALJ erred by failing to adequately address Plaintiff's severe impairments of headaches and diabetic neuropathy in his RFC determination. The Court agrees.

**A. Headaches**

An RFC must accommodate *all* limitations that are supported by the record. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *see* 20 C.F.R. § 404.1545(a)(3) ("We will assess your [RFC] based on all of the relevant medical and other evidence."). Under Social Security Ruling 96-8p, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7.

At step two, the ALJ determined that Plaintiff's headaches were a severe impairment, (r. at 22), which indicates that he found the Plaintiff's headaches imposed significant limitations on her ability to perform work activities. *See* SSR 96–3p, 1996 WL 374181, at *1 (Jul. 2, 1996) (a severe impairment, by definition, "significantly limits an individual's physical or mental abilities to do basic work activities."). But the ALJ did not properly explain why his finding at step two that Plaintiff had severe headaches did not warrant *any* functional limitations in the RFC. *See Martinez v. Colvin,* No. 14 C 2292, 2015 WL 4065032, at *7 (N.D. Ill. July 2, 2015). ("Having found that plaintiff's headaches are a severe impairment, the ALJ was required to account for them in his RFC."). "Where an ALJ finds that a claimant suffers headaches and those headaches constitute a medically determinable severe

4

impairment, an ALJ must explain how [he] considers the severity and frequency of those headaches and how the fluctuating nature of headaches impacts a claimant's ability to work." *Gregory B. v. Saul*, No. 2:19cv184, 2020 WL 995828, at *8 (N.D. Ind. Mar. 2, 2020) (citing *Look v. Heckler*, 775 F.2d 192, 195–96 (7th Cir. 1985)). The ALJ did not do so here.

The only analysis of the severity and frequency of Plaintiff's headaches in his RFC determination was the following: "[w]ith respect to the claimant's allegations of headaches, I note only a few complaints of headaches in the medical record and many denials of headaches. Clearly, the record does not support her allegations of headaches occurring three times per week." (R. at 28). This analysis is inadequate, for the reasons that follow.

First, "[t]he fact [Plaintiff] did not have a headache at the time of [a particular doctor's] visit is no reason to conclude anything about the frequency or severity of her migraines." *Moon v. Colvin,* 763 F.3d 718, 721 (7th Cir. 2014), *as amended on denial of reh'g* (Oct. 24, 2014). This is particularly true here where there is supportive evidence of headaches, including years of being prescribed medications for headaches including Tramadol and Imitrex. (*See* R. at 295 (complaints of headaches, prescribed Tramadol in April 2013); 439–40 (complaints of headaches, prescribed Imitex in April 2014); 448 (complaints of headaches, continued on Imitrex in June 2015)).

Second, even if the ALJ had a sufficient basis to discount Plaintiff's allegations of having three headaches a week, the ALJ still offered no indication of how frequent or severe her headaches actually were or the impact those headaches have on

5

Plaintiff's RFC. *See Moon,* 763 F.3d at 721 (remanding where the ALJ's analysis of the evidence regarding claimant's migraines was not "logically connected to his determination of her residual functional capacity."). It is not clear to this Court from the ALJ's analysis how Plaintiff's headaches are provided for in the ALJ's RFC assessment, which allows for a limited range of medium work with some restrictions: no work at heights, no operating moving or dangerous machinery, and no work incompatible with the loss of vision in left eye and lack of depth perception. (R. at 27). The ALJ does not explain which, if any, of those restrictions accommodate the severe impairment caused by Plaintiff's headaches. *See Moore v. Colvin*, 743 F.3d 1118, 1127–28 (7th Cir. 2014) (A "reviewing court should not have to speculate as to the basis for the RFC limitations."). This is important as the VE testified an individual who was off task more than 12% of the work-day would be unable to sustain her past job as a cashier or in any unskilled jobs. (R. at 80).

      The ALJ must explain why supportive evidence, and his own finding at step two that Plaintiff's headaches were a severe impairment, did not merit any accommodations in the RFC. *Moon*, 763 F.3d at 720–22. This "impermissible gap in [his] reasoning" warrants remand. *Cummings v. Colvin*, No. 14 CV 10180, 2016 WL 4483854, at *4 (N.D. Ill. Aug. 24, 2016) (remanding where the ALJ "referr[ed] to Claimant's headaches as a 'severe impairment' without clearly indicating what limitations they impose").

### B. Diabetic Neuropathy

The Court is also persuaded by Plaintiff's argument that the ALJ erred by failing to create an accurate and logical bridge between the evidence of Plaintiff's diabetic neuropathy and his conclusion that Plaintiff had the RFC to perform medium work, which involves lifting no more than 50 pounds, carrying up to 25 pounds, and standing and walking up to two-thirds of the work day. (Dkt. 9 at 9–10) (citing 20 C.F.R. §416.967(c)).

On June 5, 2015, Plaintiff was assessed with diabetic neuropathy and peripheral neuropathy[5] and prescribed Neurontin by advance practice nurse, Po Ling Fung. (R. at 448–453). Plaintiff received a comprehensive laboratory workup on June 25, 2015, (*id.* at 459–61), and on July 15, 2015, Victor Thomas, M.D., diagnosed Plaintiff with diabetic neuropathy and peripheral neuropathy and continued her prescription of Neurontin, (*id.* at 454–57). At the hearing, Plaintiff testified that she has pain and a burning sensation on the bottom of her feet which significantly limits her ability to stand and walk, and that she takes Neurontin for the pain. (*Id.* at 70–71).

The ALJ acknowledged these records and Plaintiff's testimony but discounted both stating:

> On June 5, 2015, the claimant was assessed with diabetic neuropathy (with an onset date of June 5, 2015). However, the overall medical

---

[5] Diabetic neuropathy is a type of nerve damage that can affect up to 50% of people with diabetes. It primarily damages nerves in the legs and feet. *Diabetic Neuropathy Symptoms,* MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/diabetic-neuropathy/symptoms-causes/syc-20371580 (last visited May 10, 2020). Peripheral neuropathy is the most common type of diabetic neuropathy and affects the feet and legs first, followed by the hands and arms. Signs and symptoms may include numbness, tingling or burning sensation, sharp pains, increased sensitivity, and serious foot problems. STEDMAN'S MEDICAL DICTIONARY 1313 (28th ed.2006).

7

> evidence of record shows the claimant with no problems with ambulation and no complaints of foot pain, foot numbness or tingling. In fact, the treatment records from April 14, 2014, show the claimant denying back pain, joint pain, joint swelling, muscle weakness, extremity weakness, headache memory loss, gait disturbance or numbness in her extremities. I note that the treatment notes for June 5, 2015 show no objective findings to support neuropathy. I note that after the claimant received the assessment of diabetic neuropathy, she did not even bother to take the medication prescribed for the condition.

(R. at 28). This analysis is flawed for the reasons that follow.

The ALJ uses faulty logic when suggesting that a treatment note from April 2014 where Plaintiff denied symptoms of pain, gait disturbance, or numbness or weakness in her extremities somehow discredits her diagnosis of diabetic neuropathy over a year later in June 5, 2015. He also misses the mark in suggesting there are "no objective findings to support neuropathy" in the June 5, 2015 treatment notes. He does not indicate what objective findings would be sufficient to support this diagnosis, nor does he explain how the histories, physical examinations and laboratory results are inconsistent with a diagnosis of neuropathy. "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon*, 763 F.3d at 722. Here, the ALJ relies on no physician's opinion to refute the June and July 2015 diagnoses of neuropathy.

The Commissioner argues that the ALJ properly relied on the opinions of the agency consultants who put no greater limitations on Plaintiff in standing and walking than given by the ALJ. (Dkt. 14 at 3). But those opinions were rendered in January 2014 and March 2014 and thus necessarily outdated as Plaintiff's initial diagnosis of diabetic neuropathy occurred on June 5, 2015. *See (*83–93, 101–07; 448–

53*); Lambert v. Berryhill,* 896 F.3d 768, 776 (7th Cir. 2018) ("ALJs may not rely on outdated opinions of agency consultants 'if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.'") (*quoting Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)). The Court cannot assume that this evidence of diabetic neuropathy would have made no difference had the agency consultants considered it.

Additionally, the ALJ's assertion that Plaintiff "did not even bother to take the medication for the condition" is not supported by the record. Plaintiff testified to taking Neurontin for her foot pain, (r. at 70–71), and the treatment note from Dr. Thomas on July 15, 2015 corroborates that Plaintiff took Neurontin "as directed," (r. at 455). Thus, the ALJ erred to the extent he discounted Plaintiff's allegations of foot pain and concomitant difficulties standing and walking because of his unfounded belief that she refused to take her medication. This is significant as the VE found that an individual who was unable to stand and walk for six hours out of an eight-hour workday could not perform Plaintiff's past job as a cashier or light work in general, (r. at 80).

In sum, the ALJ's consideration of Plaintiff's diabetic neuropathy in his RFC determination is not supported by substantial evidence and remand is warranted.[6]

---

[6] Plaintiff requests that the Court recommend that the Commissioner assign the case to a different ALJ on remand. (Dkt. 11 at 8–9). ALJ Jose Anglada is the ALJ in the present matter, and Plaintiff cites to a 2014 case in which a District Judge strongly recommended that the case on remand be reassigned away from ALJ Anglada to another ALJ. (*See Id.*, *citing Griffin v. Colvin*, No. 14 C 1182, 2014 WL 5461796, at *5 (N.D. Ill. Oct. 28, 2014)). But Plaintiff offers no explanation of how ALJ Anglada is unable to make a fair decision on remand in this case, and the Court can find none. As the hearing transcript and decision do not suggest "an unshakable commitment to the
denial of this applicant's claim," *Sarchet v. Chater,* 78 F.3d 305, 309 (7th Cir.1996), the request for reassignment is denied.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's request to remand for additional proceedings [9] is **GRANTED**, and the Commissioner's motion for summary judgment [13] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: May 12, 2020

BETH W. JANTZ
United States Magistrate Judge